**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL MADAYAG,

              Petitioner,

    v.

MICHAEL S. EVANS, Warden,

              Respondent.

_____/

No. C 08-4989 PJH

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      State prisoner Michael Madayag ("Madayag") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 31, 2008.  On November 5, 2008, the court ordered the state to show cause why the writ should not be granted.  The state filed an answer on February 6, 2009.  Madayag filed a traverse on March 6, 2009.  Having reviewed the parties' papers and the record, and having carefully considered their arguments and the relevant legal authority, the court DENIES Madayag's petition.

**BACKGROUND**

**I.    Procedural History**

      On January 25, 2005, a jury in the Monterey County Superior Court convicted Madayag, already a prisoner at the Salinas Valley State Prison ("SVSP"), of battery by a prisoner on a non-confined person under California Penal Code section 4501.5, and battery with serious bodily injury under California Penal Code section 243(d).  The information also alleged that Madayag had two prior serious felony convictions within the meaning of California's three strikes law, including a 1995 attempted murder conviction and

United States District Court

For the Northern District of California

1  a 1996 assault with a firearm conviction.  Madayag waived jury trial on the prior conviction

2  allegations, and the trial court found them to be true.

3        On May 11, 2005, the trial court sentenced Madayag to two concurrent terms of 25

4  years to life on counts one and two.  The court ordered that the terms run consecutive to

5  Madayag's sentence on his prior convictions.

6        Madayag filed a direct appeal with the California Court of Appeal raising six issues.

7  Madayag also filed a petition for writ of habeas corpus with the California Court of Appeal

8  raising six distinct claims of ineffective assistance of counsel.  On April 27, 2007, the

9  appellate court, by separate orders, denied Madayag's habeas petition and, on direct

10  appeal, conditionally reversed the trial court's judgment and stayed execution of sentence

11  on count two, battery with a serious bodily injury.  In the court's order disposing of the direct

12  appeal, the appellate court denied relief on all of Madayag's claims except for one alleging

13  that the trial court erred in its ruling on his Pitchess motion concerning the victim officer's

14  records.[1]

15        On August 8, 2007, the California Supreme Court denied review on both the direct

16  appeal and the habeas petition.  On October 31, 2008, Madayag filed the instant habeas

17  petition with this court.

18  **II.    Factual History**

19        On August 30, 2001, an incident occurred at the Salinas Valley State Prison

20  involving Officer Ralston ("Ralston"), a guard at the prison; Madayag, an inmate there; and

21  Daniel Mahe ("Mahe"), Madayag's cellmate.  All three were in the prison common area

22  when Mahe attempted to deliver a brown bag to another cell.  Reporter's Transcript on

23  Appeal ("R.T.") 762-63; Clerk's Transcript on Appeal ("C.T.") 109.  Ralston approached

24

_____

25        [1]On appeal, the state appellate court found that the trial court did not follow the proper
   procedure in deciding the Pitchess motion and remanded the case to the trial court for a new
26  Pitchess hearing.  On remand on November 30, 2007, the trial court conducted an in-camera
   hearing on Madayag's Pitchess motion and concluded that there was no discoverable
27  evidence.  In a June 17, 2009, letter to the court, respondent stated that both parties agreed
   that Madayag is not raising any issues related to the Pitchess hearing in his federal habeas
28  petition.

2

United States District Court

For the Northern District of California

1    Mahe and asked to see what was inside of the bag.  R.T. 515, 763.  Mahe said that the bag

2    contained cosmetics (lotion, deodorant, soap), while Ralston, after claiming to see a plastic

3    bag full of clear liquid fall out of the brown bag, suspected inmate-manufactured alcohol.

4    R.T. 517, 762, 777; C.T. 16.  After Mahe refused to display the contents, Ralston grabbed

5    his arm and pepper-sprayed him.  R.T. 518, 765-69.

6        Ralston testified that just after spraying Mahe, Madayag hit him on his right rear

7    side, knocking him to the ground, and he lost consciousness.  R.T. 519-20; C.T. 17-18.

8    Mahe was unable to observe whether Madayag forced Ralston to the ground because he

9    was blinded by the pepper spray.  R.T. 773.

10        Officer Yocum ("Yocum"), who was monitoring the area from a control booth,

11   testified that Ralston and Mahe initially were struggling over the bag.  R.T. 583.  Yocum

12   and Mahe both denied that Mahe struck Ralston during this initial confrontation.  R.T. 614,

13   776.  Yocum claimed that as Ralston was pepper-spraying Mahe, Madayag, who was

14   sweeping the floor about 15 feet away, dropped his broom and ran towards Ralston.  R.T.

15   583, 585; C.T. 12-13.  According to Yocum, Mahe shoved Ralston after he was pepper-

16   sprayed and just as Madayag tackled the officer with his shoulder.  R.T. 585, 603-04; C.T.

17   13.  Ralston fell and his head bounced off the floor.  R.T. 589.  Yocum sounded the alarm,

18   at which point Madayag dropped to a prone position on the floor.  R.T. 591.

19        A nurse subsequently examined Madayag and found an abrasion to his left thumb

20   and a quarter inch spot of blood on his shirt.  R.T. 635, 638, 642.  An emergency room

21   physician diagnosed Ralston with having suffered a concussion and dizziness.  R.T. 784.

22   Ralston also suffered an abrasion and soft tissue swelling at the back of his head.  R.T.

23   785-86.

24                                **ISSUES**

25        Madayag alleges the following claims for relief in his federal habeas petition:

26        (1)    that he received ineffective assistance of counsel when his trial attorney failed

27               to call defense witnesses Segi Lavea and Tyran Townsend;

28        (2)    that he received ineffective assistance of counsel when his trial attorney failed

3

United States District Court

For the Northern District of California

1         to object to the admission of exhibit 9, which included evidence regarding

2         Madayag's prior convictions;

3    (3)    that he received ineffective assistance of counsel when his trial attorney failed

4         to request a "defense of others" jury instruction; and

5    (4)    that the cumulative effect of the above errors violated his due process rights.

6                     **STANDARD OF REVIEW**

7        This court may entertain a petition for writ of habeas corpus "on behalf of a person in

8 custody pursuant to the judgment of a state court only on the ground that he is in custody in

9 violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

10 Because the petition in this case was filed after the effective date of the Antiterrorism and

11 Effective Death Penalty Act of 1996 ("AEDPA"), the provisions of that act apply here. See

12 Lindh v. Murphy, 521 U.S. 320, 327 (1997). Under the AEDPA, a district court may not

13 grant a petition challenging a state conviction or sentence on the basis of a claim that was

14 reviewed on the merits in state court unless the state court's adjudication of the claim: "(1)

15 resulted in a decision that was contrary to, or involved an unreasonable application of,

16 clearly established Federal law, as determined by the Supreme Court of the United States;

17 or (2) resulted in a decision that was based on an unreasonable determination of the facts

18 in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

19        A state court decision is "contrary to" Supreme Court authority, falling within the first

20 clause of section 2254(d)(1), if "the state court arrives at a conclusion opposite to that

21 reached by [the Supreme] Court on a question of law" or if the state court decided a case

22 differently than Supreme Court precedent on a set of materially indistinguishable facts.

23 Williams v. Taylor, 529 U.S. 362, 405 (2000). "Clearly established federal law" under

24 section 2254(d)(1) is "the governing legal principle or principles set forth by the Supreme

25 Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63,

26 71-72 (2003). It "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's

27 decisions as of the time of the relevant state-court decision." Id. at 71 (citing Williams, 529

28 U.S. at 412).

United States District Court

For the Northern District of California

1    Under the "unreasonable application" clause of section 2254(d)(1), "a federal habeas

2 court may grant the writ if the state court identifies the correct governing legal principle from

3 [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the

4 prisoner's case." <u>Lockyer</u>, 538 U.S. at 75 (citing <u>Williams</u>, 529 U.S. at 413).  However, this

5 standard "requires the state court decision to be more than incorrect or erroneous." <u>Id.</u>  For

6 the federal court to grant habeas relief, the state court's application of Supreme Court

7 authority must be "objectively unreasonable." <u>Id.</u>  The "objectively unreasonable" standard

8 is different from the "clear error" standard in that the "gloss of clear error fails to give proper

9 deference to state courts by conflating error (even clear error) with unreasonableness." <u>Id.</u>;

10 <u>see also</u> <u>Clark v. Murphy</u>, 331 F.3d 1062, 1068 (9th Cir.), <u>cert. denied</u>, 540 U.S. 968

11 (2003).  Therefore, "[i]t is not enough that a federal habeas court, in its independent review

12 of the legal question, is left with a firm conviction that the state court was erroneous. . . .

13 Rather, that application must be objectively unreasonable." <u>Lockyer</u>, 538 U.S. at 75-76

14 (internal quotations and citations omitted); <u>see also</u> <u>Clark</u>, 331 F.3d at 1068.

15    However, when the state court decision does not articulate the rationale for its

16 determination or does not analyze the claim under federal constitutional law, a review of

17 that court's application of clearly established federal law is not possible.  <u>See</u> <u>Delgado v.</u>

18 <u>Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000); <u>see also</u> 2 J. Liebman & R. Hertz, Federal

19 Habeas Corpus Practice and Procedure § 32.2, at 1424-26 & nn. 7-10 (4th ed. 2001).

20 When confronted with such a decision, a federal court must conduct an independent review

21 of the record and the relevant federal law to determine whether the state court's decision

22 was "contrary to, or involved an unreasonable application of," clearly established federal

23 law.  <u>See</u> <u>Delgado</u>, 223 F.3d at 982.

24       When a state court does not furnish a basis for its reasoning, we have no
         basis other than the record for knowing whether the state court correctly

25       identified the governing legal principle or was extending the principle into a
         new context. . . . [A]lthough we cannot undertake our review by analyzing the

26       basis for the state court's decision, we can view it through the 'objectively
         reasonable' lens ground by <u>Williams</u>. . . . Federal habeas review is not de

27       novo when the state court does not supply reasoning for its decision, but an
         independent review of the record is required to determine whether the state

28       court clearly erred in its application of controlling federal law.  Only by that

United States District Court

For the Northern District of California

1  examination may we determine whether the state court's decision was
2  objectively reasonable.

Id. at 981-82 (internal citations omitted).

### DISCUSSION

Madayag raised the first claim for ineffective assistance of counsel solely in his

habeas petition before the California Court of Appeal and the California Supreme Court.

Madayag raised the second and third claims listed above in his direct appeal before the

state courts, and both were addressed by the California Court of Appeal in a written,

reasoned decision.  Because the state courts issued postcard denials of Madayag's habeas

petition, there is no written, reasoned state court decision on the first issue.  Accordingly,

this court has conducted an independent review of the record and the relevant federal law

as appropriate in determining whether the state court's decisions on these issues were

"contrary to, or involved an unreasonable application of, clearly established federal law."

Delgado, 223 F.3d at 981-82.

**I.      Ineffective Assistance of Counsel**

    **A.      Legal Standard**

"[T]he right to counsel is the right to the effective assistance of counsel."  Strickland

v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759,

771 n.14 (1970)).  "An ineffective assistance claim has two components:  [a] petitioner must

show that counsel's performance was deficient, and that the deficiency prejudiced the

defense."  Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 466 U.S. at 687).

The court is not required to find counsel's performance deficient before considering

whether the performance prejudiced petitioner's defense.  Strickland, 466 U.S. at 697.  If

the petitioner makes an insufficient showing of either component, the court does not have

to consider the other.  Id.  Specifically, "[i]f it is easier to dispose of an ineffectiveness claim

on the ground of lack of sufficient prejudice, . . . that course should be followed."  Id.

"To establish deficient performance, a petitioner must demonstrate that counsel's

representation 'fell below an objective standard of reasonableness.'"  Wiggins, 539 U.S. at

United States District Court

For the Northern District of California

521 (quoting Strickland, 466 U.S. at 688). The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that 'the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" Id. Thus, the reasonableness of counsel's conduct must be measured against the professional norms prevailing at the time of counsel's representation. See Rompilla v. Beard, 545 U.S. 374, 387 (2005) (citing American Bar Association Standards for Criminal Justice in circulation at time of defendant's trial); Wiggins, 539 U.S. at 522-23 (focusing on whether counsel exercised reasonable professional judgment).

Judicial scrutiny of counsel's performance must be highly deferential, and review must start with a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. In addition, a determination of the reasonableness of defense counsel's conduct is based on the facts of the particular case viewed from the time of counsel's conduct. Id. at 690. Thus, the relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). Therefore, a claim of ineffective assistance of counsel requires an identification of the acts or omissions of counsel that are alleged to have been objectively unreasonable. Strickland, 466 U.S. at 690.

To establish Strickland's prejudice requirement, a petitioner must show that there is a reasonable probability that, but for counsel's errors, the proceeding's result would have been different. See Hill v. Lockhart, 474 U.S. 52, 57 (citing Strickland, 466 U.S. at 694); Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

**B.    Trial Counsel's Failure To Call Two Defense Witnesses**

Madayag argues that his counsel was ineffective for failing to call two witnesses, who would have testified that he did not assault Officer Ralston.

**1.    Background**

On September 28, 2001, Tyran Townsend ("Townsend"), a prisoner at SVSP,

United States District Court

For the Northern District of California

1    testified at Madayag's prison disciplinary hearing that he saw the entire incident at issue

2    here and at no time before, during, or after the incident did he observe Madayag tackle

3    Ralston to the ground.  Petitioner's State Petition for Writ of Habeas Corpus Exhibit ("Pet.

4    State Exh.") A-10.  Prior to trial, on August 13, 2002, a defense investigator interviewed

5    Townsend regarding the incident.  Pet. State Exh. A-11; Petitioner's Exhibit ("Pet. Exh.") F.

6    The investigator noted that Townsend stated that he had witnessed the incident and that he

7    did not see Madayag assault Ralston.  Pet. State Exh. A-11.

8         On July 8, 2003, the defense investigator subsequently interviewed Segi Lavea

9    ("Lavea"), also a prisoner at SVSP.  Pet. State Exh. A-11; Pet. Exh. E.  According to the

10   investigator's notes, Lavea did not actually see Madayag assault Ralston, but he did see

11   Madayag, Ralston, and Mahe in a scuffle.  Pet. State Exh. A-11.

12        Both Lavea and Townsend submitted declarations to the California appellate courts

13   that were consistent with the investigator's report.  In his August 28, 2006, declaration,

14   Lavea stated that he told the defense investigator in 2003 that "Although I saw Mahe,

15   Petitioner and Ralston in a scuffle, I did not see Madayag assault Ralston.  I saw the entire

16   incident."  Pet. Exh. E.  Lavea also noted that he was not subpoenaed as a witness, but

17   would have willingly testified if asked to do so.  Pet. Exh. E.

18        Similarly, in a September 22, 2006, declaration, Townsend asserted, "I told the

19   investigator that I witnessed the entire incident . . . and at no time during it did I see

20   Petitioner assault Officer Ralston."  Pet. Exh. F.  Townsend was subpoenaed and present

21   in the courthouse during Madayag's trial.  Pet. Exhibit F.  He was not called to testify, but

22   notes that he would have done so willingly.  Pet. Exh. F.

23        Townsend and Lavea both indicated in their declarations that they were housed

24   continuously at SVSP from the time of the incident through Madayag's trial.  Pet.. Exh. E,

25   F.  Neither Lavea nor Townsend spoke with any member of the defense following their

26   initial interviews.  Pet. Exh. E, F.  In his own declaration that is part of the record before this

27   court, Madayag stated that his counsel told him the day of trial that the testimony of Lavea

28   and Townsend was not required because Mahe's testimony would be sufficient.  Pet. Exh.

United States District Court

For the Northern District of California

1  G.

2  **2.    Deficient Performance**

3      Madayag contends that his counsel offered no persuasive justification for his failure

4  to present Lavea's and Townsend's testimony, which he argues constituted readily

5  available exculpatory evidence.  Respondent counters that counsel considered the

6  testimony of the witnesses, but strategically chose not to call them.  This, respondent

7  argues, amounts to a tactical decision that is virtually unchallengeable under Strickland,

8  466 U.S. at 490-91, and Lord v. Wood, 184 F.3d 1083, 1095 (9th Cir. 1995).

9      Tactical decisions of trial counsel deserve deference when (1) counsel in fact bases

10 trial conduct on strategic considerations, (2) counsel makes an informed decision based

11 upon investigation, and (3) the decision appears reasonable under the circumstances.  See

12 Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  Whether counsel's actions were

13 indeed tactical is a question of fact; whether those actions were reasonable is a question of

14 law.  Edwards v. LaMarque, 475 F.3d 1121, 1126 (9th Cir.) (en banc), cert. denied,

15 128 S. Ct. 532 (2007).  A difference of opinion alone with respect to trial tactics generally

16 does not constitute ineffective assistance.  United States v. Mayo, 646 F.2d 369, 375 (9th

17 Cir.), cert denied, 454 U.S. 1127 (1981).  If counsel reviews the preliminary facts of the

18 case and reasonably decides to pursue only one of two conflicting defense theories, for

19 example, he need not investigate the abandoned defense theory further.  See Williams,

20 384 F.3d at 611-612.

21     Here, respondent argues that Lavea's testimony that Madayag was in a scuffle

22 would be inconsistent with counsel's theory that Madayag did not strike Ralston at all.

23 Madayag, however, citing Hart v. Gomez, notes that Lavea does not claim that Madayag

24 struck Ralston.  174 F.3d 1067 (9th Cir. 1999).  Further, according to Madayag, to the

25 extent that Lavea would testify that there was physical contact between Mahe and Ralston,

26 such contact would nevertheless support the "defense of others" theory discussed below.

27     The Ninth Circuit in Hart stated that failure by counsel to investigate and introduce

28 exculpatory evidence that would bolster a defense theory and that does not interfere with

9

United States District Court

For the Northern District of California

1   an existing reasonable defense strategy may constitute deficient performance. Id. at 1071.

2   In Hart, a father was accused of molesting his daughter during multiple trips to a ranch, but

3   only when he was not accompanied by another adult. Id. at 1068-70.  At trial, the father's

4   girlfriend testified that she accompanied him every weekend at issue, and, according to the

5   record, she had offered trial counsel corroborating documentary evidence. Id. at 1070.

6   The Ninth Circuit held that counsel's failure to investigate and introduce this evidence

7   amounted to deficient performance. Id. at 1071.

8       Here, unlike Hart, counsel's reasonable defense theory that Madayag did not hit

9   Ralston in any way explains counsel's failure to introduce Lavea's testimony that Madayag

10  and Ralston were involved in a scuffle.  Madayag's attorney knew the preliminary facts of

11  the case and was aware of the defense investigator's interviews with Lavea and Townsend.

12  Accordingly, Madayag's contentions amount merely to an alternative defense theory.  This

13  alone is insufficient to show counsel's performance fell below professional norms. See

14  Williams 384 F.3d at 611-12 (where counsel reasonably selected an alibi defense as the

15  primary defense theory, counsel no longer had a duty to investigate a "conflicting" mental-

16  state defense).

17      Madayag also claims that his counsel's performance was comparable to that of the

18  lawyer in Avila v. Galaza, whose performance the Ninth Circuit found deficient.  297 F.3d

19  911 (9th Cir. 2002).  In Avila, the defendant was convicted of attempted murder for a

20  shooting at a public park. Id. at 914-15.  Three witnesses testified that the defendant dove

21  to the ground at the time of the shooting. Id. at 915.  The defense lawyer was convinced

22  that the defendant's brother was the shooter and expected the brother to admit to being the

23  shooter at trial. Id. at 916.  Counsel conducted no investigation and provided no supporting

24  evidence that the brother was the shooter, despite four witnesses who could have testified

25  to that effect. Id. at 920, 924.  The lawyer admitted after the defendant was convicted that

26  his actions were incompetent. Id. at 916.  The Ninth Circuit found that trial counsel could

27  have called fifteen different witnesses to support the defendant's testimony, but that he

28  failed to develop this evidence. Id. at 924.

**United States District Court**
For the Northern District of California

1   Madayag emphasizes that in <u>Avila</u>, one of the witnesses, similar to Townsend, was

2 interviewed pre-trial and subpoenaed, but was not called, a fact the Ninth Circuit also noted

3 in <u>Avila</u>.  <u>Id.</u> at 920.  This was, however, merely one of many factors, in addition to the

4 lawyer's failure to conduct a reasonable investigation, that led the Ninth Circuit to conclude

5 that the <u>Avila</u> defense attorney failed to provide effective counsel.  <u>Id.</u> at 924.

6   Madayag further contends that his counsel similarly failed to introduce evidence that

7 Madayag was not the attacker.  Madayag argues that his counsel's performance was

8 clearly more deficient than the <u>Avila</u> attorney's because his attorney failed to call any

9 witnesses to testify that he did not assault Ralston.

10   A lawyer has a duty to investigate information from potential witnesses even if they

11 are not called at trial.  <u>Id.</u> at 920 (citing <u>Sanders</u>, 21 F.3d at 1457).  In contrast to <u>Avila</u>, the

12 record indicates that Lavea and Townsend had been interviewed, as were other potential

13 witnesses, none of whom denied Madayag was involved in the incident.  As respondent

14 points out, <u>Avila</u> addresses the initial investigation of witnesses as opposed to the

15 attorney's decision to call them as witnesses.  Therefore, <u>Avila</u> is not controlling here since

16 the defense investigator indeed interviewed both Lavea and Townsend.

17   Citing <u>Lord</u>, Madayag further argues that his attorney should have *personally*

18 interviewed Lavea and Townsend before deciding not to elicit their testimony.  184 F.3d

19 1083.  In <u>Lord</u>, the Ninth Circuit reversed the district court's denial of a habeas petition

20 based in part on a claim of ineffective assistance of counsel.  <u>Id.</u> at 1085.  The record in

21 <u>Lord</u> demonstrated that three potential witnesses provided generally consistent statements

22 to defense investigators that they had observed the murder victim walking along a road a

23 day after the prosecution alleged that the defendant had killed her.  <u>Id.</u> at 1088.  The

24 defense attorney, however, did not personally interview the witnesses.  <u>Id.</u> at 1089.

25   The <u>Lord</u> court held that trial counsel's choice not to call the witnesses based on his

26 vague impression that they were not credible constituted ineffective assistance of counsel.

27 <u>Id.</u> at 1095.  It noted that this testimony would have dealt a "serious blow" to the

28 prosecution's case.  <u>Id.</u> at 1089.  The court further stated that the prosecution's case "was

**United States District Court**
For the Northern District of California

1    strong but not ironclad." Id. at 1088.  It asserted, "[f]ew decisions a lawyer makes draw so

2    heavily on professional judgment as whether or not to proffer a witness at trial." Id.  It

3    noted, however, that a lawyer's decision deserves less deference if he has not personally

4    interviewed the witness. Id. at 1095 n.8.  After conducting a thorough review of the record,

5    the Ninth Circuit surmised that the three witnesses' testimony was the strongest evidence

6    that could have been offered on the defendant's behalf. Id. at 1094.

7         Here, like the attorney in Lord, Madayag's counsel did not *personally* interview

8    Lavea or Townsend.  As noted, Lavea was subpoenaed and available for trial, yet

9    Madayag's counsel never spoke with him directly.  Counsel similarly told Madayag the day

10   of trial that he would not be calling Lavea or Townsend. Also, as in Lord, the two

11   witnesses' declarations here are generally consistent and appear to be the strongest

12   evidence on Madayag's behalf, since they both state that Madayag did not assault Ralston.

13   Id. at 1088, 1094.

14        Respondent speculates that Madayag's counsel would have been reluctant to base

15   his case on the testimony of convicted criminals.  However, in a case involving prison

16   assault, it is not unusual that the defendant may be required to rely on the testimony of

17   convicts.  Besides prison guards and convicts, there are not likely to be any other

18   witnesses.  Here, Mahe, the sole witness testifying on Madayag's behalf, was a convict

19   himself.  The only non-convicts who witnessed the incident, officers Ralston and Yocum,

20   testified for the prosecution.  It therefore appears that, by necessity, Madayag was required

21   to rely on the testimony of convicts.

22        As discussed above regarding Hart, Madayag's counsel appears to have relied on a

23   theory that Madayag did not strike Ralston.  174 F.3d 1067.  Given this theory, counsel

24   should have at least interviewed Lavea and Townsend to determine whether their

25   testimony would be helpful or harmful to such a defense.  See Lord, 184 F.3d at 1095

26   (explaining that counsel's decision whether a witness could benefit the defense can only

27   reasonably be made after the witness is interviewed by counsel); Avila, 297 F.3d at 920.

28   Instead, here, trial counsel relied on the testimony of the only other inmate involved in the

United States District Court
For the Northern District of California

1   dispute, one who was temporarily blinded after having been pepper-sprayed and who was

2   unaware whether Madayag tackled Ralston.

3       Respondent also argues that the court must presume that trial counsel found Mahe's

4   testimony more credible and helpful than that of Lavea and Townsend, and that under Lord,

5   the choice of whether to have a witness testify constitutes a professional judgment.  184

6   F.3d at 1095.  However, Madayag counters that his counsel's decision not to call Lavea

7   and Townsend is due less deference under Lord because counsel did not interview the

8   witnesses personally.  Id. at 1095 n.8.

9       Since Madayag's attorney did not personally interview Lavea or Townsend, it is

10  difficult to believe that the attorney reasonably assessed their credibility and likely

11  testimony before deciding not to call them.  See id. at 1095.  Because of this failure, trial

12  counsel's decision is not entitled to much deference.  See Edwards, 475 F.3d at 1126

13  (noting that reasonableness of counsel's decision is a question of law); Sanders, 21 F.3d at

14  1456-57 (refusing to defer to counsel's uninformed decision, which was based on a failure

15  to conduct a reasonable investigation, and therefore could not be a strategic choice).

16  Accordingly, the court finds that Madayag's attorney's failure to personally interview Lavea

17  and Townsend constituted deficient performance.

18      Before the state appellate courts as well as this court, Madayag also supports his

19  deficient performance argument with two exhibits, letters from his trial counsel responding

20  to inquiries by his appellate counsel.  In the first, Madayag's attorney states that he did not

21  believe that Lavea and Townsend were available to testify.  Pet. Exh. H.  In the second

22  letter, counsel asserts that he cannot remember why the witnesses were not subpoenaed.

23  Pet. Exh. I.  Respondent disputes the admissibility of these letters because they have not

24  been independently verified.

25      Even if the court were to presume that the letters are admissible, they neither add to

26  nor detract from the court's analysis on this Strickland prong.  The mere fact that counsel

27  cannot recall the tactical basis for his or her decisions does not rebut the presumption that

28  counsel acted reasonably.  Alcala v. Woodford, 334 F.3d 862, 871 (9th Cir. 2003).  Where

United States District Court

For the Northern District of California

1  all other record evidence suggests that the decision was not a reasonable tactical choice, a

2  court may conclude that the attorney's performance was deficient despite the attorney's

3  lack of recollection.  Id. ("We will not assume facts not in the record in order to manufacture

4  a reasonable strategic decision for [petitioner]'s trial counsel.").

5      For all the above reasons, the court finds that Madayag's trial counsel's performance

6  fell below an objectively reasonable standard for professional practice.  Under Strickland,

7  the court must next consider whether this deficient performance affected the outcome of

8  the trial.  466 U.S. at 687.

9              **3.    Prejudice**

10     Madayag must show three requirements to establish prejudice based on the failure

11 to call a witness, including: (1) that the witness was likely to have been available to testify;

12 (2) that the witness would have given the proffered testimony; and (3) that the witness'

13 testimony created a reasonable probability that the jury would have reached a verdict more

14 favorable to the petitioner.  Alcala, 334 F.3d at 872-73.

15     Here, looking to the first requirement, Lavea's and Townsend's declarations indicate

16 that they were available to testify.  According to their declarations, both were housed at the

17 same facility where the incident occurred, and Townsend in fact had been brought to the

18 courthouse.  This suggests that the first requirement is satisfied.

19     As to the second requirement, the defense investigator noted at the time of both

20 Townsend's and Lavea's pre-trial interview that each stated that they did not see Madayag

21 assault Ralston during the incident.  Subsequently, in 2006, Lavea and Townsend signed

22 declarations reiterating that they would have testified that Madayag did not assault Ralston.

23 Given that Townsend's pre-trial testimony and post-trial declaration are consistent, as are

24 Lavea's, the court concludes as well that the two witnesses would likely have given the

25 proffered testimony, and that the second Alcala requirement is satisfied as well.

26     The outcome therefore hinges on the third requirement – whether Lavea's and

27 Townsend's testimony would have created a reasonable probability that the jury would

28 have reached a verdict more favorable to Madayag.  For the reasons discussed below, the

**United States District Court**
For the Northern District of California

1    court concludes that this final requirement is not satisfied.

2         Madayag argues that the prosecution's case was weak because the testimony of

3    officers Ralston and Yocum was contradictory in important respects.  He contends that

4    even if the prosecution's case was strong, counsel's failure to present Lavea's and

5    Townsend's testimony resulted in prejudice, citing Brown v. Myers, 137 F.3d 1154 (9th Cir.

6    1998).  Madayag notes that the prosecution pointed out in closing arguments that there

7    was no supporting testimony for Madayag's defense that he did not attack Ralston, and

8    adds that had Lavea and Townsend been called as witnesses, that would not have been

9    the case.

10        Respondent counters that, like Avila, 297 F.3d 911, and Hart, 174 F.3d 1067,

11   discussed above, Brown,137 F.3d at 1154, holds that a trial attorney may be ineffective for

12   failing to properly investigate, but not for failing to call witnesses.  Additionally, respondent

13   contends that Lavea's and Townsend's testimony would not have exonerated Madayag.  In

14   particular, respondent argues that a jury would have been skeptical of Lavea's testimony

15   because it failed to indicate how Madayag got involved in the scuffle.

16        Examination of the record reveals that the testimony of Ralston and Yocum was not

17   in accord on two points, each addressed in turn.  The first concerns whether Madayag hit

18   Ralston in the mouth when he tackled him.  Ralston testified that Madayag's "hand came

19   and hit me in the mouth" as Madayag tackled him.  R.T. 520, 553-54, 566.  Yocum, on the

20   other hand, denied seeing Madayag's hand go towards Ralston's face.  R.T. 602.

21        The second disparity concerns Ralston's pepper-spraying of Mahe.  Ralston claimed

22   to have grabbed Mahe and pepper-sprayed him on the side of his face after Mahe turned

23   his head.  R.T. 533-34, 566.  Yocum, however, testified that Ralston and Mahe were

24   struggling over the bag when Ralston sprayed Mahe in the facial area.  R.T. 582-83, 595-

25   96.

26        As for the first instance, any disparities in Ralston's and Yocum's testimony at most

27   impacted their credibility with the jury.  This is because the issue the prosecution presented

28   to the jury was whether Madayag tackled Ralston – *not* whether he hit him in the mouth.

United States District Court

For the Northern District of California

R.T. 794.  Notably, Ralston testified that Madayag's hand hit his mouth in the context of being tackled, which Ralston refused to characterize as a "strike."  Though Yocum denied seeing Madayag's hand going towards Ralston's face, he also could not recall the position of Madayag's hands.  The jury likely overlooked Yocum's testimony, and considered Ralston's testimony that Madayag's hand hit him in the mouth as contact incidental to Madayag tackling Ralston.

Regarding the second disparity, the details of the pepper-spraying generally are consistent.  Ralston testified that he reached for the brown bag and that he grabbed Mahe and spun him around before pepper-spraying him.  Similarly, Yocum testified that Ralston reached for the bag, and that Ralston and Mahe were pulling the bag from one another.  In sum, neither of the two disparities described above weakens the prosecution's case or suggests resulting prejudice because the prosecution maintained a strong case, and Ralston's and Yocum's testimony is arguably reconcilable.  See Rios v. Rocha, 299 F.3d 796, 809, 813 n.23 (9th Cir. 2002) (finding that despite inconsistent testimony from the prosecution's witnesses in a close case, the petitioner had not met his burden of showing prejudice on two claims).

This case is also distinguishable from Brown, relied on by Madayag.  In Brown, the Ninth Circuit reversed the district court's denial of the defendant's habeas petition after the district court concluded that the attorney's deficient performance did not prejudice the defendant.  137 F.3d at 1156.  Because the parties on appeal did not dispute that the attorney's performance was deficient, the Ninth Circuit considered only whether the petitioner's trial counsel's failure to investigate and to produce witnesses affected the trial's outcome.  Id. at 1156-57.

The defendant/petitioner in Brown was accused of attempted murder for a shooting.  Id. at 1155-56.  There were multiple alibi witnesses whose testimony would have generally supported the defendant's testimony that he was not the shooter, while there were multiple inconsistencies in the prosecution's evidence.  Id. at 1157.  The prosecution emphasized the defendant's lack of corroborating testimony in its closing argument.  Id. at 1156.  The

Ninth Circuit concluded that the witnesses' testimony, though vague as to time, would have created a reasonable probability that the outcome would have been different. Id. at 1157-58.

Despite Madayag's arguments to the contrary, and unlike Brown, here, the prosecution's evidence was largely consistent. It was a strong case. Had the defense called Lavea and Townsend, they, too, would have testified that Madayag was involved in the scuffle. As respondent notes, Lavea's and Townsend's testimony would not have addressed *how* Madayag became involved in the incident.

Lavea declared that he observed Madayag in a scuffle with Ralston. Lavea and Townsend each claimed to have observed the entire incident, but neither justified Madayag's involvement. On the other hand, both Ralston and Yocum testified that Madayag became involved by tackling Ralston. The prosecution presumably would have exploited the fact that Madayag provided no explanation for his involvement. Just as the prosecution pointed out Madayag's failure to present evidence that he did not attack Ralston, the prosecution likely would have brought to the jury's attention the fact that Madayag also failed to explain how he became involved in the incident.

For these reasons, the court concludes that Madayag has not presented sufficient evidence that the two witnesses' testimony would have resulted in a different outcome. See Rios, 299 F.3d at 813 n.23 (requiring the petitioner provide sufficient evidence to show prejudice). Review of the record does not indicate that Lavea's and Townsend's testimony would undermine the prosecution's case, nor does it give rise to "grave doubt" that counsel's deficient performance was harmless. See Lord, 184 F.3d at 1096. (holding that "grave doubt" as to the harmlessness of an error affecting substantial rights requires reversal) (quoting O'Neal v. McAnich, 513 U.S. 432, 445 (1995)). Therefore, the court concludes that there is not a reasonable probability that the jury would have reached a different result if it had been provided with Lavea's and Townsend's testimony. Accordingly, this claim fails.

////

17

**C.    Trial Counsel's Failure To Object To Admission of Exhibit 9**

Madayag also argues that his counsel was constitutionally deficient in allowing evidence of his prior convictions, as contained in exhibit 9, to go before the jury.

**1.    Background**

Exhibit 9 contained Madayag's California Penal Code section 969(b)[2] records of two prior convictions, one for assault with a deadly weapon and one for attempted murder. C.T. 246-50.  The exhibit included fingerprints, Madayag's picture, and two abstracts of judgment.  R.T. 832; C.T. 246-50.

While the trial court was waiting for Mahe to be brought in to testify, the prosecution sought to admit exhibit 9 into evidence.  R.T. 758.  The trial court, in front of the jury, asked:

The Court:    Is that the 969B information?

[Prosecution]:    Yes, Your Honor.

The Court:    Any objection?

[Madayag's counsel]:    No.  The understanding would be that Mr. Madayag

would waive his right to a jury on the issue of that particular document.

The Court:    And, Mr. Madayag, you understand you have the right to have a

jury determine the question involved in Exhibit 9?

The Defendant:    Yes.

The Court:    And you waive that right and agree to have the Court do that

instead?

[Madayag]:    Yes.

The Court:    And counsel, you join?

[Madayag's counsel]:    So join.

The Court:    We'll note the jury waiver on that issue, then.

R.T. 759.  The trial court subsequently admitted exhibit 9.  R.T. 787-88.

---

[2]Section 969(b) states that, for the purpose of establishing prima facie evidence of a person's prior convictions and imprisonment, certified prison records may be introduced as evidence.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    After the jurors returned their verdict and were dismissed, the trial court found both

2    of the charged strike priors to be true based on the section 969(b) records.  R.T. 832-33.  In

3    a separate hearing on April 27, 2005, the trial court reiterated its finding that Madayag had

4    two prior convictions.  R.T. 1003.

5    Following Madayag's conviction, in a July 14, 2006 letter responding to inquiries

6    from Madayag's appellate counsel, Madayag's trial attorney stated that he did not object to

7    the admission of exhibit 9 because he believed Madayag would not stipulate to the

8    introduction of such information.  Pet. Exh. H.  Madayag, however, stated in a declaration

9    dated August 28, 2006, that he had never been told that he could stipulate and that he

10    would have done so had he known.  Pet. Exh. G.

11    The California Court of Appeal simply assumed without deciding that Madayag's

12    counsel's performance was deficient.[3]  Pet. Exh. A at 11.  The appellate court nevertheless

13    denied the claim, concluding that Madayag was not prejudiced by the deficient

14    performance.  Pet. Exh. A at 11.  It reasoned that the jury was aware that Madayag was an

15    incarcerated felon and that the case was not close.  Pet. Exh. A at 11.  According to the

16    state appellate court, the jury's knowledge of the substance of Madayag's prior convictions

17    was not reasonably probable to result in a different outcome.  Pet. Exh. A at 11.

18    **2.    Disputed Factual Issue**

19    It is not clear from the record whether exhibit 9 was submitted to the jury.

20    Immediately prior to their deliberation, the trial court informed the jurors that they would be

21    provided with the "objects of evidence."  R.T. 826.  Madayag contends that there is a "great

22    likelihood" that exhibit 9 was among the exhibits sent to the jury room.  Respondent argues

23    that the reasonable assumption based on case law is that exhibit 9 was considered by the

24    trial court alone, particularly given how careful the trial court was not to mention Madayag's

25    prior convictions in its discussion before the jury.  In its decision on direct appeal, the

26

27    _____

28    [3]The California appellate court stated, "Even if we were to assume for the sake of argument that counsel was deficient in failing to object to the admission into evidence of exhibit 9, we would not find prejudice on this record."  Pet. Exh. A at 11.

19

United States District Court

For the Northern District of California

1  California Court of Appeal failed to address this factual issue of whether exhibit 9 actually

2  went before the jury.  See Pet. Exh. A at 11.

3      Though there is some evidence that the jury would not have had access to exhibit 9,

4  it is not conclusive.  For example, the trial court noted to the parties that numerous

5  suggested jury instructions were withdrawn by consensus, including California Jury

6  Instructions 17.25 and 17.26.  The former instruction addresses the jury's duty to find a

7  prior conviction of a felony, and the latter concerns the jury's duty to find a prior felony

8  conviction in a bifurcated trial.  This withdrawal of the instructions suggests that the trial

9  court was aware that the prior conviction issue was not before the jury and that the jury

10  therefore would not need access to exhibit 9.

11      Also, numerous unpublished state appellate court decisions suggest that

12  procedurally the trial court would have treated this issue separately from the jury trial on the

13  substantive charges.  See People v. Dawson, No. A109625, 2007 WL 2323329 (Cal. Ct.

14  App. Aug. 15, 2007); People v. Howard, No. C041099, 2003 WL 361247 (Cal. Ct. App.

15  Mar. 10, 2003); People v. Medrano, No. B161648, 2003 WL 21524817 (Cal. Ct. App. July

16  7, 2003); People v. Nguyen, No. G039338, 2008 WL 3199525 (Cal. Ct. App. Aug. 8, 2008).

17  Nevertheless, because the record and supporting case law is not definitive as to whether

18  exhibit 9 actually went before the jury, the court will assume that the jury had access to the

19  969(b) records in exhibit 9, and address the merits of Madayag's claim.

20                    **3.    Deficient Performance**

21      For the reasons that follow, the court concludes that the state court's implicit

22  determination that counsel's performance was deficient was unreasonable.

23      Madayag argues that his counsel's performance was deficient because counsel

24  should have prevented the jury from learning about the specific nature of his previous

25  convictions.  He claims that he would have stipulated to his prisoner status such that the

26  jury would not have learned of the specific violent nature of his previous convictions.

27  However, even if this court were to assume that the prosecution would have accepted such

28  a stipulation, Madayag has not shown that his counsel's performance was objectively

20

United States District Court
For the Northern District of California

1  unreasonable.

2       The records contained in exhibit 9 simply listed the crimes for which Madayag had

3  been convicted and did not provide any detailed information about the nature of the crimes.

4  When the 969(b) records were discussed before the jury, the fact that they contained

5  evidence of Madayag's previous convictions was never mentioned.

6       Moreover, other evidence before the jury made it abundantly clear that Madayag

7  was an inmate at SVSP.  In particular, Ralston testified that he saw Madayag before the

8  incident when Madayag stuck his head out of his cell.  Yocum referred in his testimony to

9  Madayag as "inmate Madayag."  Yocum testified that after he sounded the yard alarm,

10 Madayag immediately laid down and proned out, which an inmate does to show

11 compliance.  Yocum and Mahe both testified that Madayag and Mahe were cellmates.  This

12 evidence suggests that the jury was already well aware that Madayag had a prior

13 conviction.

14      The Ninth Circuit has not spoken on the particular issue in this case.[4]  Since there is

15 no authority directly on point, the court looks to the general Strickland standard to

16 determine whether Madayag's counsel's performance was deficient.  While Madayag's

17 counsel could have objected to the admission of exhibit 9, the relevant inquiry for deficient

18 performance is whether the attorney's actions were reasonable, not what he could have

19 done.  Babbitt, 151 F.3d at 1173.  "The reasonableness of counsel's actions may be

20 determined or substantially influenced by the defendant's own statements or actions."

21 Strickland, 466 U.S. at 691.  Madayag must overcome a strong presumption that his trial

22 counsel's failure to stipulate was sound trial strategy as evaluated from counsel's

23

_____

24       [4]For example, in Hebner v. McGrath, the court did not address Strickland's deficient

25 performance prong in conjunction with counsel's failure to object to the admission of propensity
   evidence.  543 F.3d 1133, 1137 (9th Cir.), cert. denied, 129 S. Ct. 2791 (2009).  In affirming

26 the district court's decision denying habeas relief, the Ninth Circuit held that petitioner's
   counsel's failure to object to admission of his prior sexual misconduct as propensity evidence

27 did not constitute ineffective performance.  Id.  Based on the fact that the evidence would have
   been admitted in any event to show the petitioner's common plan or intent, the court

28 determined that the defendant could not establish prejudice due to counsel's performance.  Id.
   The Hebner court therefore did not analyze counsel's deficient performance.

**United States District Court**
For the Northern District of California

1    perspective at the time.  See id. at 689.

2        Here, the record is silent as to counsel's reasoning and strategy, except to provide

3    that at the time, counsel did not believe Madayag would stipulate.  Instead of stipulating,

4    counsel allowed admission of exhibit 9 on the condition that Madayag would waive his right

5    to a jury trial on the prior conviction element of the offense.  Counsel made a choice of trial

6    strategy based on his interaction with Madayag at the time, which under Strickland

7    constitutes a reasonable decision.  See id. at 691.  Madayag has not presented evidence

8    sufficient to overcome Strickland's strong presumption that under the circumstances, his

9    counsel's decision was sound trial strategy.  See id. at 689.  For these reasons, the court

10   concludes that trial counsel's performance was not objectively unreasonable, contrary to

11   the state court's implicit assumption otherwise.

12              **4.    Prejudice**

13       Madayag contends that, because the prosecution's case was "far from

14   overwhelming," the state court unreasonably applied Strickland's prejudice standard and

15   that admission of exhibit 9 was prejudicial.  Citing Crotts v. Smith, Madayag claims that he

16   was prejudiced because his earlier convictions were similar to the battery charges he

17   faced, leading the jury to believe he possessed a propensity for violence.  73 F.3d 861 (9th

18   Cir. 1996) (pre-AEDPA case).

19       In Crotts, the Ninth Circuit held that the habeas petitioner's counsel was ineffective

20   for failing to object to the admission of statements that the defendant had previously killed a

21   police officer.  Id. at 866-67.  Crotts was a pre-AEDPA capital case in which the defendant

22   was accused of assaulting a police officer.  Id. at 863.  The prosecution had entered into

23   evidence the fact that the defendant was currently on parole for a felony.  Id.  A witness

24   subsequently testified that the defendant told her that he had just served time for killing a

25   police officer, when, in fact, it was undisputed that the defendant had never done so.  Id. at

26   864.  Because the prosecution's case was not overwhelming and the outcome turned on

27   witness credibility, the Ninth Circuit found that presentation of this evidence likely induced

28   the jury to convict.  Id. at 867.

**United States District Court**
For the Northern District of California

1     Here, unlike in <u>Crotts</u>, the prosecution did not attempt to introduce evidence that was

2  false or misleading.  Also, as the state court pointed out, the prosecution's evidence in this

3  case is strong.  The testimony of Ralston and Yocum was materially consistent, while the

4  defense, even if Lavea and Townsend had testified, could not show how Madayag became

5  involved in the scuffle.  Additionally, the jury was already aware that Madayag had at least

6  one prior conviction because he was incarcerated.  The likely prejudicial effect of any

7  deficient performance on counsel's part must be evaluated in light of the relative strength of

8  the state's case.  <u>See</u> <u>Johnson v. Baldwin</u>, 114 F.3d 835, 838 (9th Cir. 1997).

9     Even assuming that the jury had access to Madayag's section 969(b) records in

10  exhibit 9, because of the specific nature of Madayag's crime – battery by a prisoner on a

11  non-prisoner – Madayag's assertion that the jurors used this information as propensity

12  evidence is not convincing.  <u>See</u>, <u>e.g.</u>, <u>Hebner</u>, 543 F.3d at 1137 (holding that no prejudice

13  resulted from counsel's failure to object to evidence that the jury would have heard

14  anyway).  Given the strength of the prosecution's case and the evidence before the jury

15  that Madayag was already a convict, it is not reasonably probable that the jury would have

16  reached a different result if Madayag's counsel had objected to the admission of exhibit 9.

17  <u>See</u> <u>Strickland</u>, 466 U.S. at 694; <u>Johnson</u>, 114 F.3d at 838 (evaluating the likely prejudicial

18  effect of counsel's deficient performance in the context of the entire record, ultimately

19  finding prejudice).  Therefore, the court concludes that the state court's decision was a

20  reasonable application of the clearly established <u>Strickland</u> prejudice standard.

21     **D.     Trial Counsel's Failure To Request a "Defense of Others" Jury**

22         **Instruction**

23         **1.     Background**

24     In Madayag's counsel's declaration before the state trial court in support of his

25  motion for pre-trial discovery, counsel asserted that he was "informed and do[es] believe"

26  that Madayag was coming to the defense of Mahe when Madayag saw Ralston pepper-

27  spray Mahe.  C.T. 58-59.  Counsel continued on to state that Madayag used reasonable

28  and necessary force to prevent further injury to another inmate.  C.T. 59.  At trial, however,

United States District Court

For the Northern District of California

1    counsel did not request a "defense of others" jury instruction.

2         The state appellate court rejected Madayag's claim that his attorney's failure to

3    request a "defense of others" jury instruction constituted ineffective assistance.[5]  Pet. Exh.

4    A at 17.  The court concluded that such a defense was inconsistent with counsel's choice of

5    the "I did not do it defense."  Pet. Exh. A at 17.  It determined that Madayag's attorney

6    faced an unavoidable choice that it would not second-guess.  Pet. Exh. A at 17-18.  The

7    state court noted that counsel's choice not to pursue a "defense of others" argument

8    appeared to be a sound tactical decision.  Pet. Exh A at 18 n.6.

9                        **2.    Deficient Performance**

10        Madayag argues that the state court's decision ran counter to Supreme Court

11   authority and that his counsel's failure to request an instruction on the "defense of others"

12   constituted ineffective assistance.  He contends that under Mathews v. United States, he

13   was entitled to such a jury instruction based on supporting evidence.  485 U.S. 58, 63

14   (1988).

15        Madayag's reliance on Mathews is misplaced.  The Supreme Court in Mathews

16   addressed whether the *trial court erred in refusing to allow* a jury instruction on inconsistent

17   defenses that was requested by the defendant.  Id. at 62.  In Mathews, the petitioner filed a

18   motion in limine prior to trial seeking to raise a secondary entrapment defense.  Id. at 61.

19   The district court denied the motion.  Id.  The Supreme Court stated that a defendant

20   generally is entitled to any jury instruction for a recognized defense that has sufficient

21   supporting evidence.  Id. at 63 (citing Stevenson v. United States, 162 U.S. 313 (1896)).

22   ───────────────────

23        [5]The relevant jury instruction reads:

24             It is lawful for a person who, as a reasonable person, has grounds for
         believing and does believe that bodily injury is about to be inflicted upon [another
25        person] to protect that individual from attack.

26             In doing so, [he] may use all force and means which that person believes
         to be reasonably necessary and which would appear to a reasonable person, in
27        the same or similar circumstances, to be necessary to prevent the injury which
         appears to be imminent.

28   CALJIC 5.32.

24

United States District Court
For the Northern District of California

1  The Court, however, did not consider whether *trial counsel should have requested* that the

2  jury be instructed regarding such defenses. See id. at 62-66.

3      This case is therefore distinguishable from Mathews, in which the Court reviewed

4  the trial court's decision to deny counsel's motion for a jury instruction, not trial counsel's

5  decision whether to request a jury instruction. Here, Madayag's *counsel did not request* a

6  jury instruction. Therefore, unlike in Mathews, the trial court was never faced with the

7  decision whether to deny counsel's motion. Rather, as the California appellate court

8  reasonably found, the defense's two theories were incompatible and counsel's choice to

9  deny any assault, thus foreclosing a "defense of others" jury instruction, constituted a

10  sound decision under the circumstances.

11      Additionally, Madayag cites numerous other cases in support of his position,

12  including Bradley v. Duncan, 315 F.3d 1091, 1099 (9th Cir. 2002), and Conde v. Henry,

13  198 F.3d 734, 740 (9th Cir. 1999). Like Mathews, however, these federal habeas cases

14  focus on the trial court's role in allowing a jury instruction and therefore are not persuasive.

15  In both of these cases, the trial attorney had in fact sought a jury instruction. See Bradley,

16  315 F.3d at 1094; Conde, 198 F.3d at 737. Thus, the courts did not consider whether *trial*

17  *counsel should have requested* such an instruction.

18      In a recent case, the Supreme Court held that it has never required defense counsel

19  to pursue every nonfrivolous claim or defense, regardless of its merit, viability, or realistic

20  chance of success. Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009). In Knowles, the

21  Court considered the Ninth Circuit's decision affirming the district court's grant of habeas

22  relief due to ineffective assistance of counsel. Id. at 1417-18. The Court reversed the

23  Ninth Circuit and held that counsel's abandoning a defense that has "almost no chance of

24  success" is reasonable, even if there is "nothing to lose" by preserving the defense. Id. at

25  1420. Though Knowles was decided after the state appellate court decision in this case, it

26  is instructive because the Supreme Court recognized that it had never previously

27  established a standard requiring counsel to assert a defense just because he has nothing

28

United States District Court

For the Northern District of California

1    to lose in pursuing it.[6]  Id. at 1419.

2        Additionally, the Ninth Circuit subsequently addressed Knowles in the context of an

3    ineffective assistance of counsel claim due to counsel's failure to file a motion to suppress.

4    Moore v. Czerniak, No. 04-15713, 2009 WL 2231650 (9th Cir. July 28, 2009).  In Moore,

5    the Ninth Circuit found that the state court's decision was contrary to clearly established

6    federal law and was an unreasonable application of Strickland, thereby reversing the

7    district court decision.  Id.  The Ninth Circuit interpreted Knowles to apply when counsel

8    makes a reasonable decision as to the merits of a defense – *not* when counsel is entirely

9    ignorant of the relevant law.  Id. at *12.

10       Here, Madayag's counsel indicated in a pre-trial motion to the trial court that he

11   believed that Madayag was coming to the defense of Mahe.  In contrast to Moore, this

12   indicates that counsel was in fact aware that a "defense of others" theory was available to

13   Madayag.  Thus, he was not ignorant of the relevant law.  See id. (finding that because

14   counsel was not reasonably informed about the relevant law and consequently made a

15   gross error as to the harmlessness of failing to suppress defendant's taped confession, his

16   performance was constitutionally deficient).

17       The state appellate court found that counsel's choice appeared to be "a sound

18   tactical decision."  It stated that the evidence in support of a "defense of others" theory was

19   minimal at best.  A difference of opinion as to trial tactics does not constitute denial of

20   effective assistance.  See Mayo, 646 F.2d at 375.  Thus, because Madayag's counsel was

21   not ignorant of the relevant law, the court concludes that the state court's determination

22   that counsel's performance was not deficient was reasonable.

23           **3.     Prejudice**

24       Madayag also asserts, but provides no supporting argument or evidence, that

25   counsel's deficient performance caused prejudice.  However, because the court concludes

26   _____

27       [6]Federal habeas review requires applying clearly established federal law as it existed
     at the time of the state court's decision.  Lockyer, 538 U.S. at 71-72.  Thus, habeas relief
28   should be granted only if the state court unreasonably applied the more general Strickland
     ineffectiveness of counsel standard.  Knowles, 129 S.Ct. at 1420.

1   that counsel's conduct was not deficient, it declines to reach the prejudice issue.

2   Strickland, 466 U.S. at 697.

3   **II.      Cumulative Effect**

4          Finally, Madayag argues that the errors listed above were cumulatively prejudicial

5   and that the ineffective performance of his counsel, in the aggregate, deprived him of his

6   right to a fair trial.

7          In some cases, although no single trial error is sufficiently prejudicial to warrant

8   reversal, the cumulative effect of several errors may still prejudice a defendant so much

9   that his conviction must be overturned.  See Alcala, 334 F.3d at 893-95 (reversing

10  conviction where multiple constitutional errors hindered defendant's efforts to challenge

11  every important element of proof offered by prosecution).  However, where no single

12  constitutional error exists, nothing can accumulate to the level of a constitutional violation.

13  See Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002).

14         In Alcala, there were multiple constitutional errors that hindered defendant's efforts

15  to challenge crucial elements of proof offered by prosecution.  See Alcala, 334 F.3d at 883-

16  93. Here, all of Madayag's claims of ineffective assistance are distinguishable from Alcala

17  because they are either wholly without merit or are of such little merit that they do not

18  constitute a constitutional violation.  Because Madayag has not established that his counsel

19  was ineffective on any of the above bases, there is nothing to aggregate.

20                                    **CONCLUSION**

21         For the reasons set forth above, the court DENIES Madayag's petition for a writ of

22  habeas corpus.  This order fully adjudicates this case and terminates all pending motions.

23  The clerk shall close the file.

24  **IT IS SO ORDERED.**

25  Dated: August 25, 2009

26

27                                    _____
                                      PHYLLIS J. HAMILTON
28                                    United States District Judge

United States District Court

For the Northern District of California